JAMES P. JOHNSON, Executor, *vs.* MARY E. JOHNSON & others.

April Term, 1874.

WILL—COSTRUCTION—WIFE.—A devise by a husband to his " dear wife," not mentioning her name, applies exclusively to the individual who answers the description at the date of the will, and not to an after-taken wife.

*Ed. Baxter*, for complainant.

*Thos. H. Malone*, for defendants.

THE CHANCELLOR :—On the 27th of August, 1866, Thos. B. Johnson made his last will and testament, by which, after certain specific provisions for his two sons and their families, he proceeds thus :

" Item 6. I will and bequeath to my dear wife, after paying my funeral expenses and all just debts, all my real and personal property not hereinbefore disposed of, to have and to hold the same during her natural life or widowhood. In the event of her 2d marriage it is my will and desire that she retain one equal third of the same in value, including my dwelling, the fee simple title of said third to vest in her and be subject to her disposal, and the remaining two-thirds to go one-half to my son James P. Johnson, and the other half to my son Andrew H. Johnson in trust for his wife and children, to be used and descend precisely as the real estate in item 5th. Should my wife never marry. a 2d time, all the real estate herein given to her shall, at her decease, one-half go to my son James P. Johnson, and the other half to my son Andrew H. Johnson in trust as in item 5th. The personal estate given to my wife, she may, at her decease, dispose of as in her life time her own good discretion may suggest."

The wife of Thomas B. Johnson, at the date of this will, was the mother of the children who are provided for therein, and then sixty-two years of age. She died on the 1st of March, 1871, and, on the 9th of May, 1872, Thos. B. Johnson intermarried with the defendant, Mary E. Johnson. On the 25th of July, 1874, Thos. B. Johnson departed this life. His will has been proved and recorded, and the complainant qualified as executor thereof. The debts of the estate, it seems, will absorb the greater part, if not all of the personalty. The question submitted to me is, whether the second wife of Thos. B. Johnson, the defendant Mary E., is entitled to claim the benefit of the 6th item of the will. The property in that item is devised and bequeathed, it will be noticed, to " my dear wife." And the solution of the question turns upon the point whether the will designates the object of the testator's bounty, or, in the absence of any positive language designating the object of, the testator's bounty, is to be construed, so far as the object is concerned, as of the date of its execution or as of the date of the testator's death.

The original intent of the testator, every one will concede at once, was to give the property devised to his then existing wife. The words "my dear wife" point to a person then existing, the qualifying adjective necessarily implying affection for an individual. Such affection being, of course, inconceivable of a person not then occupying the designated relation. To substitute another object of the testator's bounty, would be to violate his intent and to make a will for him. In the absence of all authority, I should consider it too plain for argument that the will does effectually designate the wife existing at the date of the will as the object of the testator's bounty as if she had been mentioned by her Christian name.

If the will had been republished after the second marriage, it is probable that such republication would have sufficed to give the property to the second wife. 1 Went. Offi. Ex. ch. 1, p. 62 ; 1 Wms. Ex. 181 ; *Perkins* v. *Mickletwhaite*, 1 P. Wms. 275. It is not claimed that there was any republication either express or implied, that is, by again going through the ceremonies essential to constitute a valid execution, or actually executing a codicil in writing. 1 Jar. on Wills, 174, side page. Nor has it been, nor could it be, insisted that merely retaining the will after the second marriage worked a republication. This point has been expressly decided otherwise in the case of wills made by a person when *non compos mentis,* and retained, after coming to his senses, by him. Swinb. pt. 2, § 3, pl. 2 ; *Rice, Exr.*, v. *Campbell & others,* Sup. Crt. Tenn., Dec. T., 1872, at Nashville.

But if the will does not definitely designate the person to be benefited, what is the rule of law as to the time to which the construction shall relate? Shall it be the date of executing the will, or the date of the testator's death? The plainest dictate of common sense would be, it seems to me, to seek the subject-matter of devise, and the object of benefit at the date of the will. And so are the authorities. If, says Ch. B. Comyn, the testator devise £10 to the parish where he lives and afterwards removes to another parish, the

parish where he lived at the time of the will shall have the legacy. Com. Dig. Chancery, 3 Y. 16. So, all the common law judges and Lord Hardkwicke as Chancellor, held that a devise to charitable uses, made before the statute of mortmain, was good, although the testator died after the act went into effect. *Ashburnham* v. *Bradshaw*, 2 Atk. 36. So, where a testator devised certain property in trust for the child "wherewith his said wife was then pregnant," to be given to the child absolutely, upon coming of age, but if he died under age then over. The child was still-born. Afterwards, the testator died, without revoking his will, leaving his wife pregnant with another child, in due time born alive. Lord Chancellor Thurlow held clearly that the child born after the will could have no right, and declared accordingly. *Foster* v. *Cook*, 3 Bro. C. C. 347. The same ruling has been made in South Carolina upon a similar case. There, the testator gave property to be divided between his children "then born and to be born." At the time of the execution of the will, the wife of the testator was pregnant, but was delivered long before the testator's death. *Held*, that the provision must have been made with reference to the child of which the wife was then pregnant; and that a child born after the death of the testator was not provided for by the will. *Burke* v. *Wilder*, 1 McC. Ch. 551. In *Borcham* v. *Bignall*, 8 Hare, 131, a devise to the testator's nephew and wife, and to the survivor, was held to apply exclusively to the wife living at the date of the will and death of the testator, and not a subsequently married wife. And in *Bryant's Trust*, 2 Sim. N. S. 103, a bequest to "the husbands of my said daughters," after the death of a legatee for life, was held to mean the husbands living at the date of the will, and who survived the testatrix, and not a husband married afterwards and before the death of the tenant for life. And the very point raised by the facts in this case was decided in *Garratt* v. *Niblock*, 1 Russ. & My. 629, against the second wife, the only distinction in the two cases being that the bequest in that case was to the testator's "beloved wife," and in this case to his "dear

"wife," a distinction without a difference, if ever there was one.

Upon these authorities all the text-writers agree in laying it down as the law, that a devise or bequest to the wife of the testator, or the wife of some other person, must be confined to the wife at the date of the will, if there be one at that time. 1 Jar. on Wills, p. 284, side page ; 2 Wms. Ex. 946 ; 1 Wms. Ex. 182 ; 2 Red. Wills, 349 ; 1 Went. Off. Ex. ch. 1, p. 62.

Against this uniform array of authority, the only thing produced on the other side, is a suggestion made by Judge Redfield in his note to the text as above cited, where he lays down the law consistently with the cases, that in his opinion, the ruling ought to be different where the devise or bequest is to the testator's wife. He concedes that the rule of construction universally adopted may be sound when the devise is to the wife of another, but thinks it is too technical and refined when applied to the testator's own wife. The reason for this distinction is not very obvious, but if it were ever so plain, it is my duty to declare the law, not to make it. And if an unbroken line of decisions cannot make the law, it would be in a glorious state of uncertainty indeed.